UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

AMY MEADOWS, et al.,

        Plaintiffs,

   v.

DICKEY'S BARBECUE RESTAURANTS INC.,

        Defendant.

Case No.  15-cv-02139-JST

**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION**

Re: ECF No. 15

Before the Court is Defendant Dickey's Barbecue Restaurants, Inc.'s Motion to Compel Arbitration.  ECF No. 15.  For the reasons set forth below, the Court will grant the motion.

I.      **BACKGROUND**

      A.     **Parties and Claims**

Defendant Dickey's Barbeque Restaurants, Inc. ("Dickey's") is a Texas-based corporation that operates a chain of corporate and franchise restaurants known as Dickey's Barbeque Pits.  ECF No. 10 ¶ 8.  Plaintiffs Amy Meadows, Dawn Toff, Donna Schiano, Alfred Pena, Christy Bagby, James Domsic, Charyl Hart, George Jones, and GJones3 Ventures, LLC[1] ("Plaintiffs") are California residents seeking to represent a class of owners and former owners of Dickey's Barbeque Pit franchises in California.  Id. ¶¶ 1-7, 20.  All of the Plaintiffs purchased a Dickey's franchise after receiving Dickey's Franchise Disclosure Documents and signing a Dickey's Franchise Agreement.  Id.

On July 10, 2015, Plaintiffs filed their First Amended Complaint alleging fraud, violations of California's Franchise Investment Law, and violations of California's Unfair Competition Law.

---

[1] Plaintiffs Charyl Hart, George Jones, and GJones3, LLC purchased one Dickey's franchise.  Id. at ¶ 7.  Dickey's notes that Plaintiff George Jones executed an Assumption Agreement where he transferred his Dickey's franchise to Plaintiff Gjones3 Ventures, LLC.  ECF No. 15 at 3 n.3; see ECF No.16, Decl. of Trinity Hall, Ex. 12.

United States District Court
Northern District of California

See ECF No. 10 ¶¶ 22-41.  Plaintiffs allege that the Franchise Disclosure Documents contained several misrepresentations relating to the cost of converting franchise locations, the use of alternate suppliers by franchisees, the extent to which Plaintiffs' franchises would be protected from encroachment by other franchises, the level of on-site support and training Dickey's would provide to franchisees, the accommodations for menu change requests, and the percentage of Plaintiffs' sales they would owe to cover Dickey's royalty and marketing fund.  Id. ¶ 13.  Plaintiffs also allege that Dickey's employees made additional misrepresentations outside of the Franchise Disclose Documents, including that it would be easy it would be for franchisees to obtain bank financing, that franchisees could expect to earn substantial revenue in their first year of operation, that no prior restaurant experience was necessary, and other false and misleading representations. Id. ¶ 14.  Plaintiffs seek damages, restitution, disgorgement, declaratory and injunctive relief, costs, and attorneys' fees.  Id. at 10-11.  Plaintiffs also seek a declaration that Article 27 of the Franchise Agreement, which requires that all disputes be resolved through arbitration, is unenforceable.  Id. ¶ 41.

**B.     Arbitration Provision**

In support of its Motion to Compel Arbitration, Dickey's attached each Plaintiff's Franchise Agreement.  See ECF No. 16, Decl. of Trinity Hall ("Hall Decl."), Exs. 4-6; ECF No. 17, Decl. of Trinity Hall ("Hall Decl."), Exs, 7-11.[2]  The Franchise Agreements signed by the Plaintiffs are each approximately sixty-pages long and printed in small type.  Article 27, the provision regarding dispute resolution, appears near the end of the document.  There are two materially different versions of Article 27: one in the Franchise Agreements signed by Plaintiffs Dawn Toff (Exhibit 5), Donna Schiano (Exhibit 6), Alfred Pena (Exhibit 7), and James Domsic (Exhibit 10) (collectively, the "Toff Plaintiffs"); and another in the Franchise Agreements signed by Plaintiffs Amy Meadows (Exhibit 4), Christine Bagby (Exhibits 8 and 9), and George Jones (Exhibit 11) (collectively, the "Meadows Plaintiffs").  See id.

---

[2] For space reasons, the Hall Declaration is split into two parts on the Court's electronic docket, and so it bears two different docket numbers.

The Toff Plaintiffs' arbitration provision requires that disputes first be resolved through non-binding mediation conducted by a mutually agreed upon mediator in Collin County, Texas or by the American Arbitration Association ("AAA") at the AAA office nearest to Dickey's corporate headquarters in Plano, Collin County, Texas.  See, e.g., Hall Decl., Ex. 5 at 51 of 60. That provision defines "disputes" as

> [A]ll disputes, controversies, claims, causes of action and/or alleged breaches or failures to perform arising out of or relating to this Agreement (and attachments) or the relationship created by this Agreement . . .

Id.  If mediation fails, the parties must submit to binding arbitration at the AAA office nearest Plano, Collins County, Texas on an individual basis.  Id.  The arbitration provision also requires that the "proceedings be conducted in accordance with the then current arbitration rules of the area."  Id.

The Meadows Plaintiffs' arbitration provision defines "disputes" as: "all disputes, controversies, claims, causes of action and/or alleged breaches or failures to perform."  Hall Decl., Ex. 4 at 50.  Unlike the Toff Plaintiffs' arbitration provision, this provision states that binding arbitration encompass all "disputes"

> arising between the parties in connection with, or arising from, or with respect to (1) any provision of this Agreement or any other agreement related to this Agreement between the parties; (2) the relationship of the parties; (3) *the validity of this Agreement* or any other agreement between the parties, *or any provision thereof* . . . .

Id. (emphasis added).  Non-binding mediation must first be conducted by a mutually agreed upon mediator or by AAA at Dickey's corporate headquarters in Dallas, Texas.  Id.  If mediation fails, the parties must then submit to binding arbitration at the AAA office in Dallas, Texas.  Id.  The arbitration provision provides that the proceeding "shall be conducted in accordance with the then current commercial arbitration rules of the aura [sic]."  Id.

Both sets of Franchise Agreements also include terms permitting Dickey's – but not its franchisees – to bring certain claims in court without participating in mediation or arbitration, as well as a Texas choice-of-law provision, and a venue clause.  See id. at 51-52; Hall Decl., Ex. 5 at 51.

United States District Court
Northern District of California

### C.      Motion to Compel Arbitration

On July 17, 2015, Dickey's filed its motion to compel arbitration of each Plaintiff's claims on an individual basis, stay further judicial proceedings pending completion of arbitration, and strike Plaintiffs' class allegations.  ECF No. 19.  Dickey's argues that each of the claims in Plaintiffs' First Amended Complaint must be resolved through arbitration and on an individual basis.  Plaintiffs oppose the motion, arguing that the arbitration provision in the Franchise Agreement is unconscionable and unenforceable.  ECF No. 24.  Plaintiffs challenge the arbitration provision as a whole.  Id. ¶ 41.  In reply, Dickey's contends that this Court is without jurisdiction to consider Plaintiffs' unconscionability argument because Plaintiffs are required to arbitrate whether the arbitration provision itself is enforceable.  ECF No. 26.

After the hearing on the motion to compel arbitration, the Court directed the parties to provide supplemental briefing regarding whether the parties' choice-of-law provision is valid and whether the arbitration clause is unenforceable under Texas law.  See ECF No. 32.  The parties submitted supplemental briefs addressing these questions.  See ECF Nos. 33, 34.

### D.      Jurisdiction

The Court has jurisdiction over this action under 28 U.S.C. § 1332(d)(2).

## II.      LEGAL STANDARD

The Federal Arbitration Act ("FAA") applies to arbitration agreements in any contract affecting interstate commerce.  See Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 119 (2001); 9 U.S.C. § 2.  Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  This provision reflects "both a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract."  AT&T Mobility LLC v. Concepcion, 131 S.Ct. 1740, 1745 (2011) (internal citations omitted).

On a motion to compel arbitration, the court's role under the FAA is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue."  Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207

1    F.3d 1126, 1130 (9th Cir. 2000).  If the court is "satisfied that the making of the agreement for

2    arbitration or the failure to comply therewith is not in issue, the court shall make an order directing

3    the parties to proceed to arbitration in accordance with the terms of the agreement."  9 U.S.C. § 4.

4    Where the claims alleged in a complaint are subject to arbitration, the Court may stay the action

5    pending arbitration.  Id. § 3.

6    **III.    DISCUSSION**

7        **A.    Arbitrability**

8            The first question the Court must resolve is who decides the question of arbitrability – this

9    Court or an arbitrator?  The answer to this question depends in part on the language of the parties'

10   agreements.

11           "[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the

12   parties have agreed to arbitrate or whether their agreement covers a particular controversy."  Rent-

13   A-Ctr., West, Inc. v. Jackson, 561 U.S. at 63, 68-69 (2010).  "Just as the arbitrability of the merits

14   of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question 'who

15   has the primary power to decide arbitrability' turns upon what the parties agreed about *that*

16   matter."  First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995) (emphasis in original)

17   (internal citations omitted).  Whether the court or the arbitrator decides arbitrability is "an issue for

18   judicial determination unless the parties clearly and unmistakably provide otherwise."  Howsam v.

19   Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002) (quoting AT&T Techs., Inc. v. Commc'ns

20   Workers of America, 475 U.S. 643, 649 (1986)).  While there is a general rule to resolve

21   ambiguities in arbitration agreements in favor of arbitration, ambiguities as to the delegation of

22   arbitrability are resolved in favor of court adjudication.  See First Options, 514 U.S. at 94-95.  For

23   arbitration agreements under the FAA, "the court is to make the arbitrability determination by

24   applying the federal substantive law of arbitrability absent clear and unmistakable evidence that

25   the parties agreed to apply non-federal arbitrability law."  Brennan v. Opus Bank, 796 F.3d 1125,

26   1129 (9th Cir. 2015) (internal citations and quotation marks omitted).

27           As a preliminary matter, the Court applies federal arbitrability law because the Franchise

28

United States District Court
Northern District of California

5

Agreement's choice-of-law provision does not *expressly* state that Texas law governs the question of arbitrability.  See *id.*; see also *Cape Flattery Ltd. v. Titan Maritime, LLC*, 647 F.3d 914, 921 ("the courts should apply federal arbitrability law absent 'clear and unmistakable evidence' that the parties agreed to apply non-federal arbitrability law").

Turning to the question at hand, Dickey's argues that the evidence shows a "clear and unmistakable" agreement to delegate all questions of arbitrability to the arbitrator.  ECF No. 26 at 2.  Dickey's rests its argument on two main points:  first, it argues that Article 27 of the Franchise Agreements contains a broad delegation clause that includes arbitrability; and second, it argues that the agreements incorporate by reference the commercial rules of the AAA, which shows the parties clear intent to delegate arbitrability.

### 1.     The Meadows Plaintiffs

As to the Meadows Plaintiffs, Dickey's first argument has significant force, because the arbitration provision in their Franchise Agreements requires that disputes regarding the validity of any provision in the Agreement must be sent to arbitration.  Specifically, Article 27 specifies that disputes regarding "any provision of this Agreement" or "the validity of this Agreement or any other agreement between the parties, or any provision thereof" must be "submitted for binding arbitration. . . ."  Hall Decl., Exs. 4, 8, 9, 11.  Under relevant Ninth Circuit authority, this constitutes clear and unmistakable language indicating that the threshold issue of arbitrability is delegated to an arbitrator.

In *Momot v. Mastro*, 652 F.3d 982 (9th Cir. 2011), the Ninth Circuit considered similar language in an arbitration provision.  In connection with an asset purchase transaction, the parties entered into an agreement where a clause in the arbitration provision stated that challenges to "the validity or application of any of the provisions of this [section]" were required to be submitted to binding arbitration.  *Id.* at 984.  In ordering that the plaintiff's claims be adjudicated in court and granting an injunction staying arbitration proceedings, the district court first decided that the plaintiff's claims did not arise out of or relate to the agreement.  *Id.* at 986.  The Ninth Circuit reversed and held that the parties' agreement clearly and unmistakably indicated their intent for

the arbitrators to decide the threshold question of arbitrability.  Id. at 988.  The language of the arbitration provision "delegating to the arbitrators the authority to determine 'the validity or application of any of the provisions of' the arbitration clause constitutes 'an agreement to arbitrate threshold issues concerning the arbitration agreement.'" (citing Rent-A-Ctr., 561 U.S. at 68).[3]

Momot is controlling here.  The Franchise Agreements entered into by Plaintiffs Meadows, Bagby, Jones, Hart, and GJones3 Ventures LLC state that the validity of the Agreement or any provision of it must be submitted to arbitration.  The Court accordingly concludes that this language clearly and unmistakably indicates the parties' intent to delegate the threshold issue of arbitrability.

### 2.    The Toff Plaintiffs

The Toff Plaintiffs' Franchise Agreements are another story.  Those agreements do not contain the same clause delegating decisions about the validity of the Franchise Agreement or any of its provisions.  Instead, they state that "all disputes, controversies, claims, causes of action and/or alleged breaches or failures to perform *arising out of or relating to* this Agreement" are subject to arbitration.  Hall Decl., Exs. 5, 6, 7, 10 (emphasis added).  Dickey's argues that this too is clear and unmistakable language that indicates that the threshold issue of arbitrability must be delegated to an arbitrator.  ECF No. 26 at 2-3.

Because the language that disputes "arising out of or relating to" the Franchise Agreement

---

[3] At the hearing on this motion, Plaintiffs attempted to distinguish Momot on the ground that the delegation provision in that case specifically referred to the arbitration provision.  The clause at issue in Momot stated:

> (a) *Arbitration.* If a dispute arises out of or relates to this Agreement, the relationships that result from this Agreement, the breach of this Agreement *or the validity or application of any of the provisions of this Section 4,* and, if the dispute cannot be settled through negotiation, the dispute shall be resolved exclusively by binding arbitration.

Momot, 652 F.3d at 988 (emphasis in original).  In this case, although the delegation provision does not call out the arbitration provision in particular, it does delegate to the arbitrator the authority to decide "the validity of this Agreement . . . or any provision thereof," and this language is contained within the arbitration provision itself.  Any distinction between the language in this case and the language at issue in Momot is immaterial.

United States District Court
Northern District of California

is so broad, it might theoretically encompass the threshold issue of arbitrability.  But it does not rise to the level of "clear and unmistakable evidence" of delegation required to defeat the presumption that the court, not the arbitrator, will decide the issue of arbitrability.  See Kimble v. Rhodes College, Inc., No. C-10-5786 EMC, 2011 WL 2175249, at *2 (N.D. Cal. June 2, 2011) (finding that language requiring "any dispute" between the parties be submitted to arbitration did not clearly encompass arbitrability).

Dickey's next argues that the incorporation of the AAA rules in the Franchise Agreements provides clear and unmistakable evidence of the parties' agreement to delegate arbitrability to the arbitrator.  ECF No. 26 at 3-4.  The Toff Plaintiffs' agreements[4] require that disputes be submitted to arbitration at the AAA office closest to Plano, Collin County, Texas and follow the "current commercial arbitration rules of the area."  Hall Decl., Exs. 5, 6, 7, 10.  Within the AAA Commercial Rules, Rule 7(a) delegates all jurisdictional questions, including arbitrability, to the arbitrator.  The Rule states: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."  AAA Commercial Rule 7(a) (effective as of October 1, 2013).[5]

It is true that, under some circumstances, incorporating the AAA rules into an agreement can evince a "clear and unmistakable" intent to delegate.  Most recently, in Brennan v. Opus Bank, the Ninth Circuit affirmed a district court's finding that an employment agreement's express incorporation of the AAA rules, as part of the arbitration provision, was clear and unmistakable evidence of the parties' intent to submit the arbitrability dispute to arbitration.  796 F.3d at 1131.  In so holding, the court recalled its earlier observation in Oracle America, Inc. v. Myriad Group A.G., 724 F.3d 1069, 1074 (9th Cir.2013) that "[v]irtually every circuit to have considered the

---

[4] The Meadows Plaintiffs' agreements contain similar provisions, but the Court has already determined that the arbitrability of their claims will be decided by the arbitrator and therefore does not discuss those agreements further.  See Hall Decl., Exs. 4, 8, 9, 11.

[5] Dickey's requests that the Court take judicial notice the AAA Rules.  ECF No. 26 at 4 n. 3. Pursuant to Federal Rule of Evidence 201(b), the request is granted.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    issue has determined that incorporation of the [AAA] arbitration rules constitutes clear and

2    unmistakable evidence that the parties agreed to arbitrate arbitrability." Id. at 1130.  But the

3    Brennan court limited its holding to the facts of the case:  an arbitration agreement between two

4    sophisticated parties, one an experienced attorney and businessman and the other a regional

5    financial institution.  Id. at 1131.  Both Brennan and Oracle specifically left open the question of

6    whether the same rule would apply when fewer than all the parties to an arbitration agreement

7    were sophisticated.  Id.; Oracle, 724 F.3d at 1075 n.2.

8          Recently, another court in this district concluded that the same incorporation rule should

9    not apply when a party to contract is a consumer.  In Tompkins v. 23andMe, Inc., the court

10   declined to find that incorporation of the AAA rules was sufficient to establish delegation in a

11   contract between a DNA testing service and individual consumers.  Tompkins v. 23andMe, Inc.,

12   No. 5:13-CV-05682-LHK, 2014 WL 2903752, at *11-12 (N.D. Cal. June 25, 2014).  The

13   Tompkins court contrasted the facts before that court, where customers bought and obtained DNA

14   tests and agreed to the terms of service online, with the facts of Oracle, where two technology

15   companies negotiated and entered into a licensing agreement.  The Tompkins court stated: "There

16   is good reason not to extend this doctrine [in Oracle] from commercial contracts between

17   sophisticated parties to online click-through agreements crafted for consumers."  Id. at *11.

18         This Court agrees with Tompkins that an inquiry about whether the parties clearly and

19   unmistakably delegated arbitrability by incorporation should first consider the position of those

20   parties.  See Rent-A-Ctr., 561 U.S. at 70 n.1 (explaining that the "clear and unmistakable"

21   requirement "is an 'interpretive rule,' based on an assumption about the parties' expectations); see

22   also Mohamed v. Uber Technologies, Inc., No. C-14-5200 EMC, 2015 WL 3749716, at *10 (N.D.

23   Cal. June 9, 2015) ("[W]hether the language of a delegation clause is "clear and unmistakable"

24   should be viewed from the perspective of the particular parties to the specific contract at issue.

25   What might be clear to sophisticated counterparties is not necessarily clear to less sophisticated

26   employees or consumers.").  After all, the question is whether the language of an agreement

27   provides "clear and unmistakable" evidence of delegation.  To a large corporation (like Oracle) or

28

1   a sophisticated attorney (like Brennan), it is reasonable to conclude that it does.  But applied to an

2   inexperienced individual, untrained in the law, such a conclusion is likely to be much less

3   reasonable.

4        Here, the individual Plaintiffs were each far less sophisticated than Dickey's, a well-

5   established franchisor corporation.  Each Plaintiff was asked to sign a complicated, 60-page

6   agreement, drafted by Dickey's, containing a myriad of legal terms.  Neither Toff nor Domsic had

7   prior experience running a business or owning a franchise.  ECF 24-2, Decl. of Dawn Toff ¶ 5;

8   ECF 24-6, Decl. of James Domsic ¶ 5.  There is no evidence that any Plaintiff had legal training or

9   experience dealing with complicated contracts.

10       Moreover, other courts frequently treat franchise agreements more like consumer contracts

11  than like commercial ones, owing to the lower sophistication and inferior bargaining position of

12  franchisees.  As the Ninth Circuit noted:

> Although franchise agreements are commercial contracts they
> exhibit many of the attributes of consumer contracts. The
> relationship between franchisor and franchisee is characterized by a
> prevailing, although not universal, inequality of economic resources
> between the contracting parties. Franchisees typically, but not
> always, are small businessmen or businesswomen or people . . .
> seeking to make the transition from being wage earners and for
> whom the franchise is their very first business.   Franchisors
> typically, but not always, are large corporations.

18  Nagrampa v. MailCoups, 469 F.3d 1257, 1282 (9th Cir. 2006) (quoting Postal Instant Press, Inc. v.

19  Sealy, 43 Cal. App. 4th 1704, 1715-16 (1996)).  "California courts have long recognized that

20  franchise agreements have some characteristics of contracts of adhesion because of the 'vastly

21  superior bargaining strength' of the franchisor."  Id.  Relevant here, at least one Texas court has

22  recognized that a franchisee, unrepresented by counsel, is not a sophisticated party.  Carousel's

23  Creamery, L.L.C. v. Marble Slab Creamery, Inc., 134 S.W.3d 385, 394 n.4 (Tex. App. 2004),

24  cause dismissed (Aug. 19, 2005).  And in Bonanno v. Quizno's Franchise Co., LLC, No. 06–cv–

25  02358–CMA–KLM, 2009 WL 1068744 (D. Colo. Apr. 20, 2009) – a case on which Dickey's

26  places substantial reliance – the court found that "Quiznos retains far greater power in the parties'

27  relationship than any one franchisee . . . .  Thus, when the Court views the competing versions of

28

United States District Court
Northern District of California

1    the parties' relationship, it finds that Quiznos retained the bulk of the bargaining power." <u>Id.</u>,

2    2009 WL 1068744, at *22.

3           For these reasons, the Court concludes that the Toff Plaintiffs were not "sophisticated,"

4    and that the rule announced in <u>Brennan</u> and <u>Oracle</u> does not apply in this case.  The Supreme

5    Court has held that "courts should not assume that the parties agreed to arbitrate arbitrability

6    unless there is "clea[r] and unmistakabl[e]" evidence that they did so."  <u>First Options</u>, 514 U.S. at

7    944 (alterations in original).  For persons such as Plaintiffs here, incorporation of the AAA rules

8    does not meet that test.  As to the Toff Plaintiffs, the Court will decide the question of arbitrability.

9           **B.        Challenge to the Delegation Clause**

10          Because the Court found that Dickey's and the Meadows Plaintiffs clearly and

11   unmistakably delegated the question of arbitrability to the arbitration, "the only remaining

12   question is whether the particular agreement *to delegate* arbitrability—the Delegation Provision—

13   is itself unconscionable."  <u>Brennan</u>, 796 F.3d at 1132 (emphasis in original); <u>see also</u> <u>Rent-A-</u>

14   <u>Center</u>, 561 U.S. at 71-72 (requiring that the unconscionability claim be specific to the delegation

15   clause).  A court can decline to enforce the delegation clause if the clause itself is unconscionable

16   or otherwise unenforceable under the FAA.  <u>Brennan</u>, 796 F.3d at 1132.

17          Plaintiffs challenge the entire arbitration clause as unconscionable, but do not challenge the

18   specific delegation clauses as unconscionable.  Accordingly, the Court concludes that the

19   unconscionability challenge made by the Meadows Plaintiffs must be heard by an arbitrator.  <u>See</u>

20   <u>Rent-A-Center</u>, 561 U.S. at 75 (declining to consider respondent's claim that the entire agreement

21   to arbitrate was unconscionable because it was not specific to the delegation clause).

22          **C.        Challenge to the Arbitration Provision**

23          Because the Court found that Dickey's and the Toff Plaintiffs did not clearly and

24   unmistakably delegate arbitrability questions to an arbitrator, the Court now turns to analyze their

25   defense to arbitration – that the arbitration provision is unenforceable.

26                 **1.        Choice of law**

27          When deciding whether an arbitration agreement is valid, courts "apply general state-law

28

United States District Court
Northern District of California

principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration." Mundi v. Union Sec. Life Insur. Co., 555 F.3d 1042, 1043 (9th Cir. 2009) (citations and internal quotation marks omitted).  A district court exercising diversity jurisdiction must apply the law of the state in which it sits when determining the validity of an arbitration clause.  See Nagrampa, 469 F.3d at 1280.  Where an arbitration agreement contains a choice-of-law clause, a district court must determine whether to enforce the law chosen by the parties based on the conflict-of-law rules of the forum state.  See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941).

California's choice-of-law framework is set forth in Restatement (Second) of Conflict of Laws section 187 and in Nedlloyd Lines B.V. v. Superior Court, 3 Cal. 4th 459 (1992).  A court must first determine "(1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law." Nedlloyd, 3 Cal. 4th at 466 (citing Restatement § 187(2)).  If neither of these tests are met, the court need not enforce the parties' choice of law.  Id.  If either test is met, "the court must next determine whether the chosen state's law is contrary to a fundamental policy of California."  Id. Fundamental public policy preempted by the FAA cannot be the basis for rejecting the parties' choice of law provision.  Mortensen v. Bresnan Commc'ns, LLC, 722 F.3d 1151, 1159 (9th Cir. 2013).  However, if there is a fundamental conflict with California law, "the court must then determine whether California has a 'materially greater interest than the chosen state in the determination of the particular issue . . . .'"  Nedlloyd, 3 Cal. 4th at 466 (quoting Restatement § 187(2)).  The choice of law will not be enforced if California has a materially greater interest than the chosen state.  Id.

### a.      Whether the parties agreed to the choice-of-law provision

Section 27.5 of the Franchise Agreements between the Toff Plaintiffs and Dickey's specifies that Texas law applies to any dispute.  Hall Decl., Exs. 5, 6, 7, 10 ("This agreement . . . shall be governed and construed in accordance with the laws of the state of Texas.").

The Court first determines whether the parties agreed to be bound to the choice-of-law-

provision.  Plaintiffs argue that because the parties did not have a "meeting of the minds" with respect to the choice-of-law provision, California law should apply instead.  ECF No. 24 at 9-10. Plaintiffs cite to Winter v. Window Fashion Professionals, Inc., 166 Cal. App. 4th 943 (Cal. Ct. App. 2008), to support this argument.

In Winter, the franchisee sued the franchisor for fraud, rescission, and statutory violations, and the franchisor responded by filing a petition to compel arbitration.  166 Cal. App. 4th at 946. The franchise agreement required binding arbitration in Dallas, Texas, and included a Texas choice-of-law provision.  Id.  Prior to executing the franchise agreement, the franchisor gave the franchisee an offering circular that stated that the out-of-state forum clause and the choice-of-law clause "may not be enforceable under California law."  Id.  The Winter court affirmed the trial court's holding that there was "no meeting of the minds" as to the forum selection clause and the choice-of-law provision in the franchise agreement because of the franchise circular's advisement. Id. at 949-50.

In coming to this decision, the Winter court relied on the Ninth Circuit case Laxmi Investment, LLC v. Golf USA, 193 F.3d 1095 (9th Cir. 1999).  Laxmi similarly involved a franchisee who received an offering circular suggesting that the out-of-state forum selection clause in the franchise agreement may not be enforceable under California law and that if the law was inconsistent with the franchise agreement, California law would control.  193 F.3d at 1096. Without deciding whether the California statute that limited venue to California for franchise disputes was preempted by the FAA,[6] the Laxmi court found it impermissible for franchisors to include misleading language in the offering circular stating that California law would control and then insisting that it would not control.  Id. at 1098.  The court concluded that there was "no evidence that [the franchisor] ever indicated that it would insist upon an out-of-state forum despite the contravening California law," and held that there was no meeting of the minds as to the forum selection clause.  Id. at 1097.

---

[6] The Ninth Circuit has since held that the FAA preempts section 20040.5 of the California Franchise Relations Act, which restricts venue to California.  Bradley v. Harris Research, Inc., 275 F.3d 884, 889 (9th Cir. 2001).

United States District Court
Northern District of California

Like the <u>Winter</u> and <u>Laxmi</u> franchisees, Plaintiffs in the instant action received Franchise Disclosure Documents before they executed Franchise Agreements.  The Franchise Disclosure Documents state that "[t]he franchise agreement requires application of the laws of Texas.  This provision may not be enforceable under California law."  <u>See</u> ECF No. 16-1, Ex. A at 43 of 176.  However, immediately preceding these statements, the Franchise Disclosure Document contains a table that lists the important provisions of the Franchise Agreement.  Under the choice-of-law row, the Document notes that "Texas law applies except as otherwise required by applicable state law."  <u>Id.</u> at 42 of 176.  The state cover page to the Franchise Disclosure Document also makes clear in all caps and bold lettering:

> The Franchise Agreement states that Texas law governs the Franchise Agreement, and this law may not provide the same protections and benefits as your local law. You may want to compare these laws.

<u>Id.</u> at 4.  Although the Franchise Disclosure Documents state that the choice-of-law clause "may not be enforceable," the Franchise Disclosure Documents also include other provisions that make clear that Dickey's would insist on the application of Texas law.  The Court concludes that the parties agreed to apply Texas law.

### b.    Whether Texas law applies

Next, the Court decides whether to apply Texas law in determining the enforceability the arbitration provision.

The Court must first determine whether there is a substantial relationship between the chosen state and the parties or whether there is reasonable basis for the parties' choice of law.  Dickey's is headquartered in Plano, Texas.  The Franchise Agreements also require that payments be due in Texas.  There is a substantial relationship between the chosen state – Texas – and the parties.  <u>See</u> <u>Peleg v. Neiman Marcus Group, Inc.</u>, 204 Cal. App. 4th 1425, 1446-47 (2012) (applying Texas law where one of the contracting parties had headquarters in Texas); Restatement (Second) of Conflict of Laws § 187 cmt. f (recognizing that a "substantial relationship" with the chosen state exists where "one of the parties is domiciled or has his principal place of business" there).

1    Because there is a substantial relationship between the chosen state and the parties to the

2    Franchise Agreement, the next inquiry is "whether the chosen state's law is contrary to a

3    fundamental policy of California." Hoffman v. Citibank (S. Dakota), N.A., 546 F.3d 1078, 1082

4    (9th Cir. 2008) (internal quotations omitted). Here, the Court looks at whether applying Texas

5    unconscionability law would be contrary to a fundamental public policy of California.

6    Plaintiffs make two points in arguing that California law should apply. First, Plaintiffs

7    argue that Texas law conflicts with the California Franchise Investment Law ("CFIL") because

8    Texas has no counterpart to the CFIL, "and thus depends on conflicting common law." ECF No.

9    24 at 8. Second, Plaintiffs argue the Court should apply California law to this action because of

10    significant differences between Texas and California unconscionability law. ECF No. 33 at 5-7.

11    Plaintiffs identify several variances between California and Texas unconscionability law, such as

12    whether a contract of adhesion is procedurally unconscionable and whether waiving certain

13    statutory remedies is substantively unconscionable.

14    The Court need not address Plaintiffs' first argument, as to the policy conflict with the

15    CFIL, because "a separate conflict of laws inquiry must be made with respect to each issue in the

16    case." Washington Mut. Bank, FA v. Superior Court, 24 Cal. 4th 906, 920 (2001). The question

17    before the Court is not what law applies to Plaintiffs' substantive claims, but rather only which

18    state's law governs the enforceability of the arbitration provision. Dajani v. Dell Inc., No. C 08-

19    5285 SI, 2009 WL 815352, at *2 (N.D. Cal. Mar. 26, 2009).

20    Turning to that question (and Plaintiffs' second argument), the CFIL protects franchisees

21    "from unfair and deceptive business practices," Bridge Fund Capital Corp. v. Fastbucks Franchise

22    Corp., 622 F.3d 996, 1003 (2010), and includes remedies for breaches of that statute. Plaintiffs

23    first note that the CFIL entitles Plaintiffs to recover punitive damages, see CAL CORP. CODE §

24    31300 et seq., but that the Dickey's arbitration provision purportedly limits the recovery of

25    punitive or exemplary damages, see Section 27.2, Ex. 5, 6, 7, 10. In addition to permitting

26    punitive damages, the CFIL makes clear that any provision requiring waiver of compliance with

27    the CFIL is not permitted. See CAL CORP. CODE § 31512; see also Wimsatt v. Beverly Hills

28

United States District Court
Northern District of California

Weight Loss Clinics Int'l, Inc., 32 Cal. App. 4th 1511, 1520 ("One of the most important

protections California offers its franchisee citizens is an antiwaiver statute which voids any

provision in a franchise agreement which waives any of the other protections afforded by the

Franchise Investment Law.").  Plaintiffs contend that while a provision that waives remedies

available under the CFIL is substantively unconscionable under California law, it is unclear

whether a court would reach the same result under Texas law.  ECF No. 33 at 6.

Plaintiffs have not actually identified how application of Texas unconscionability law to

the contested arbitration provision would contravene the CFIL.  The arbitration provision begins

with a limiting clause stating that punitive damages are to be waived "to the fullest extent

permitted by law."  See Hall Decl., Ex. 5, 6, 7, 10.  Along with this limiting clause in the

arbitration provision, Section 29 of the Franchise Agreement specifies that when a state's

controlling law is inconsistent with the Franchise Agreement, the state law governs.  See id.  The

California-specific section also goes on to state that any provision of the Franchise Agreement that

is otherwise prohibited under the CFIL is void.  Id.  While limiting punitive damages under the

CFIL conflicts with "fundamental California public policy in favor of protecting franchisees from

unfair and deceptive business practices," Bridge Fund Capital Corp., 622 F.3d 996, 1003 (9th Cir.

2010); see also Indep. Ass'n of Mailbox Ctr. Owners, Inc. v. Superior Court, 133 Cal. App. 4th

396, 412-13 (2005), the Dickey's arbitration provision does not actually contract around that

policy.[7]

_____

[7] Should Plaintiffs' statutory rights to punitive damages under the CFIL actually be curtailed by
the arbitration agreement, the Court would find that this defense to enforceability is not preempted
by the FAA.  Consequently, this could be a permissible basis to reject the parties' choice of law.
The Court recognizes that the FAA displaces a state contract defense that disproportionately
affects arbitration or disfavors arbitration.  See Mortensen, 722 F.3d at 1159-60 (interpreting
Concepcion to mean that any general state-law contract defense that has a disproportionate effect
on arbitration is displaced by the FAA).  State policies that do not disfavor arbitration, however,
are not preempted.  For example, in Chavarria v. Ralphs Grocery Co., 733 F.3d 916 (9th Cir.
2013), the Ninth Circuit held that California's procedural unconscionability rules were not
preempted because "they apply equally to the formation of all contracts."  Id. at 926.  The court
went on to distinguish between a state law that would specifically invalidate arbitration, which
would be impermissible because it targets arbitration and a court invalidating a contract term that
is agnostic towards arbitration, which would be permissible because "it does not disfavor
arbitration."  Id. at 927.  Similarly, in Smith v. Jem Group, Inc., 737 F.3d 636 (9th Cir. 2013), the
Ninth Circuit held that a Washington law that invalidated attorney fee agreements that do not

Plaintiffs additionally argue that if there is *any potential* that statutory protections under California law might be undermined, then California law must apply.  Id. at 6 (citing to Pinela v. Neiman Marcus Group, Inc., 238 Cal. App. 4th 227, 249 (2015)).  But Plaintiffs' quotation of Pinela is misleading; the quote they recite is not the holding of the case, but rather, a description of another case Pinela discusses.

In Pinela, the California Court of Appeals held that a choice-of-law provision in an employment arbitration agreement rendered the delegation clause of the arbitration provision substantively unconscionable.  238 Cal. 4th at 249, reh'g denied (July 29, 2015), review denied (Sept. 16, 2015).  Plaintiffs, former employees of a Texas-based department store, sued for various wage and hour law violations.  Id. at 234.  Neiman Marcus moved to compel arbitration, but the trial court ultimately held that the arbitration agreement was unconscionable.  Id. at 237.  On appeal, the court found that the delegation clause did not clearly and unmistakably delegate arbitrability to an arbitrator and further held that the delegation clause itself was unenforceable.  Id. at 249.  In coming to that conclusion, the court held that the delegation clause was procedurally unconscionable because it was part of a contract of adhesion.  Id. at 243.  The court then held that the delegation clause was substantively unconscionable because the Texas choice-of-law provision would restrict plaintiffs from using California unconscionability arguments in challenging the enforceability of the arbitration provision or from limiting the choice-of-law provision to prevent substantial injustice.  Id. at 249.  Finally, the court applied California law to conclude that the entire arbitration agreement was unconscionable.  Id. at 258.

---

comport with Washington's Rules of Professional Conduct was not preempted by the FAA.  Id. at 641.  The court arrived at this holding for three reasons: first, the state law did not unduly burden arbitration; second, Washington's procedural unconscionability focused on the process that results in the formation of the arbitration agreement and does not specify the manner that arbitration must proceed; and third, Washington's unconscionability law is not specifically aimed at or place additional burden on arbitration.  Id.  Turning to the present action, California has an established public policy against contracts and agreements that force franchisees to waive their statutory rights.  See Cal. Corp. Code § 31512.  Enforcing the CFIL's anti-waiver provision is not aimed at arbitration not does it place an additional burden on arbitration.  Further, the parties have not shown, as in Mortensen, that the anti-waiver provision disproportionately affects arbitration. Based on these reasons, the Court would find that this defense to enforceability would not be preempted by the FAA.  It is for this reason, among others, that the Court concludes that the application of Texas law would not contravene the CFIL.

United States District Court
Northern District of California

The instant action differs from <u>Pinela</u> in one material way: unlike <u>Pinela</u>, this Court is not looking at the delegation clause and how the choice of law provision interacts with the delegation clause.  <u>See id.</u> at 249 ("[I]t is the interaction of the choice of law clause . . . with the delegation clause . . . that we focus upon.").  The <u>Pinela</u> court concluded that the arbitrator, in deciding the arbitrability of the agreement, would not be able to evaluate the validity of the choice-of-law provision before deciding enforceability.  <u>Id.</u>  In the present action, however, the Court *is* actually evaluating the validity of the choice-of-law provision under California's framework and determining whether a fundamental conflict exists.

Because the arbitration provision does not eliminate the ability to recover punitive damages under CFIL, Plaintiffs have failed to identify an actual conflict with California policy. Further, Plaintiffs' arguments focusing on the differences between California and Texas unconscionability law and the stricter standards under Texas law in establishing unconscionability is not a valid reason to apply California law.  <u>See Han v. Samsung Telecomms. Am., LLC</u>, No. CV 13-3823-GW AJWX, 2013 WL 7158044, at *7 (C.D. Cal. Dec. 16, 2013) (rejecting plaintiffs' argument that California unconscionability law should apply "because it produces a more favorable result than that of the agreement's chosen forum"); Restatement (Second) of Conflict of Laws § 187 cmt. g ("A forum will not refrain from applying the chosen law merely because this would lead to a different result than would be obtained under the local law of the state of the otherwise applicable law.").

### 2.    Unconscionability under Texas law

Because the parties' arbitration provision does not violate a fundamental policy of California, the Court will analyze the enforceability of the parties' arbitration provision under Texas law in accordance with the choice-of-law provision in the parties' Franchise Agreement.

Under Texas law, a court may find that a contract or any clause of a contract is unconscionable but must afford parties "a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination."  TEX. BUS. & COM. CODE § 2.302.  Arbitration agreements may be either substantively or procedurally

1   unconscionable, or both.  Royston, Rayzor, Vickery, & Williams, LLP v. Lopez, No. 13-1026,

2   2015 WL 3976101, at *3 (Tex. June 26, 2015), reh'g denied (Sept. 11, 2015).  Procedural

3   unconscionability "refers to the circumstances surrounding the adoption of the arbitration

4   provision," and substantive unconscionability "refers to the fairness of the arbitration provision

5   itself."  Carter v. Countrywide Credit Indus., Inc., 362 F.3d 294, 301 (5th Cir. 2004) (citing In re

6   Halliburton, 80 S.W.3d 566, 571 (Tex. 2002)).

7                              **a.        Procedural unconscionability**

8          Procedural unconscionability relates to the actual making or inducement of the contract

9   and "focuses on the facts surrounding the bargaining process."  TMI, Inc. v. Brooks, 225 S.W.3d

10  783, 792 (Tex. App. 2007).  To find procedural unconscionability, "some form of oppression and

11  unfairness" must "taint the negotiation process leading to the agreement's formation."  Johnson v.

12  AT & T Mobility, L.L.C., No. 4:09-CV-4104, 2010 WL 5342825, at *4 (S.D. Tex. Dec. 21, 2010);

13  see also In re Palm Harbor Homes, Inc., 195 S.W.3d 672, 678 (Tex. 2006).  Unequal bargaining

14  power alone does not negate an agreement to arbitrate.  In re Palm Harbor Homes, 195 S.W.3d at

15  678 ("[t]he principles of unconscionability do not negate a bargain because one party to the

16  agreement may have been in a less advantageous bargaining position.").  Additionally, contracts of

17  adhesion contracts are not *per se* unconscionable or void.  Id. at 678.

18         Plaintiffs contend that the arbitration provision is procedurally unconscionable because

19  Dickey's occupied a superior bargaining position and because Dickey's affirmatively

20  misrepresented the nature of the arbitration provision.  ECF No. 33 at 3.  The sole case Plaintiffs

21  cite to support its position is Delfingen US-Texas, LP v. Valenzuela, 407 S.W.3d 791 (Tex. Civ.

22  App. 2013).  In Delfingen, a state appellate court affirmed the trial court's holding that an

23  arbitration agreement between an employer and a native Spanish speaking employee was

24  procedurally unconscionable.  Id. at 803.  The employee's paperwork, including the arbitration

25  provision, was given to the employee in English.  Id. at 794.  At an employee orientation, that was

26  conducted entirely in Spanish, the human resources representative explained parts of the

27  paperwork but did not explain the arbitration agreement.  Id. at 794-95.  The employee argued that

28

United States District Court
Northern District of California

19

1  this was procedurally unconscionable because she was told that everything important contained in

2  the paperwork was translated to her and would not have signed had she known about the

3  arbitration provision.  Id.  The appellate court affirmed the trial court's conclusion that the

4  employer affirmatively misled the employee about the nature and significance of the arbitration

5  agreement.  Id. at 803.

6        Here, the Court finds that the arbitration clause is not procedurally unconscionable under

7  Texas law.  There is a disparity of bargaining power between Plaintiffs and Dickey's, and

8  Dickey's did offer the contracts to the Toff Plaintiffs on a take-it-or-leave-it basis.  See Toff Decl.

9  ¶¶ 8-10, Schiano Decl. ¶ 6, Pena Decl. ¶ 6, Domsic Decl. ¶ 8.  However, under Texas law,

10  imbalance in the relative sophistication of the parties "is insufficient on its own to render the

11  agreement unconscionable."  Fleetwood Enters., Inc. v. Gaskamp, 280 F.3d 1069, 1077 (5th Cir.

12  2002) opinion supplemented on denial of reh'g, 303 F.3d 570 (5th Cir. 2002).  The Toff Plaintiffs

13  have not shown that the negotiation process was tainted by oppression or unfairness.  While the

14  arbitration provision was buried near the back of a sixty-page Franchise Agreement, the provision

15  was not hidden. Plaintiffs are presumed to have read contracts they have signed.  See In re Bank

16  One, N.A., 216 S.W.3d 825, 826 (Tex. 2007).  And at least one Plaintiff specifically sought to

17  amend and remove the arbitration provision from her Franchise Agreement but was told that the

18  arbitration agreements were not negotiable.  Toff Decl. ¶ 8.  Unlike the employee in Delfingen,

19  there is no evidence that Plaintiffs were incapable of understanding the arbitration provision or

20  that Dickey's misrepresented the existence of the arbitration clause or otherwise engaged in fraud

21  or deception.  See Delfingen, 407 S.W.3d at 803; see also In re Green Tree Servicing LLC, 275

22  S.W.3d 592, 603 (Tex. App. 2008); Fleetwood Enters., Inc., 280 F.3d at 1077 ("The only cases

23  under Texas law in which an agreement was found procedurally unconscionable involve situations

24  in which one of the parties appears to have been incapable of understanding the agreement.").

25        The Court concludes that, under Texas law, the arbitration provision is not procedurally

26  unconscionable.

27  ///

28

20

United States District Court
Northern District of California

b.       **Substantive unconscionability**

"The test for substantive unconscionability is whether, 'given the parties' general commercial background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract.'" In re Palm Harbor Homes, 195 S.W.3d at 678 (quoting In re FirstMerit Bank, N.A., 52 S.W.3d 749, 757 (Tex. 2001)).

Plaintiffs argue that the arbitration provision is substantively unconscionable because the provision precludes the ability to obtain punitive damages under CFIL. Texas courts have held that a contract is substantively unconscionable if it waives certain statutory rights. For example, in In re Poly-Am, L.P., 262 S.W.3d 337 (Tex. 2008), the Texas Supreme Court held that an arbitration provision, which prevented an arbitrator from reinstating employment or entering an award with punitive damages, was substantively unconscionable. Id. at 353. The court reasoned that although in some instances waiving punitive damages is not substantively unconscionable, in this instance the two waivers would eliminate key remedies in the Texas Workers' Compensation Act. Id. at 352 ("Because we view the anti-retaliation provisions of the Workers' Compensation Act as a non-waivable legislative system for deterrence necessary to the nondiscriminatory and effective operation of the Texas Workers' Compensation system as a whole, we agree with [the employee] that the provisions eliminating key remedies under the statute are unenforceable.").

Similarly, in Security Service Federal Credit Union v. Sanders, 264 S.W.3d 292 (Tex. App. 2008), a Texas appellate court held that an arbitration provision that waived the right to recover attorneys' fees under Texas' Deceptive Trade Practices Act ("DTPA") was substantively unconscionable. The court reasoned that this waiver was inconsistent with Texas public policy in enacting the DTPA to encourage consumers themselves to file complaints under the DTPA. Id. at 299-300.

In the present case, as discussed above, the arbitration provisions do not waive any statutory remedies that may be available under CFIL. The waiver provision precludes punitive damages "to the fullest extent permitted by law." Section 27.2, Ex. 5, 6, 7, 10. CFIL prohibits

United States District Court
Northern District of California

1    waiver of this provision.  See CAL CORP. CODE § 31512.  On this basis, the Court cannot conclude

2    that the arbitration provision is substantively unconscionable.

3              Dickey's also argues that the arbitration provision is not substantively unconscionable even

4    though Dickey's reserves the right to litigate certain claims.  Section 27.3 of the Franchise

5    Agreement permits Dickey's to avoid arbitration and litigate claims "(a) for monies owed, (b)

6    injunctive relief or other extraordinary relief, or (c) involving the possession of disposition of, or

7    other relief relation to real property, in any court having jurisdiction . . . ."

8              The Texas Supreme Court recently upheld an arbitration provision that carved out certain

9    claims from arbitration.  See Royston, 2015 WL 3976101, at *9.  In Royston, a client and a law

10   firm entered into a contract that contained an arbitration provision.  Id. at *1.  The provision

11   required the parties to submit to arbitration in Nueces County, Texas but permitted the firm to

12   litigate fee and expense recovery.  Id.  The Court found that the although this provision was one-

13   sided because "it excepted any fee claims by Royston, Razor from its scope," the Court concluded

14   that it was not so grossly one-sided so as to be unconscionable.  Id. at *5.

15             Similarly in In re FirstMerit Bank, N.A., 52 S.W.3d 749 (Tex. 2001), the Texas Supreme

16   Court upheld an arbitration agreement that permitted the bank to seek judicial relief when

17   enforcing its security agreement, recovering the buyers' monetary loan obligation, and foreclosing

18   on buyers.  Id. at 757.  The court reasoned that given the commercial needs of the bank, the

19   arbitration agreement that lacked mutuality was not so one-sided as to be unconscionable.  Id.

20             Although Dickey's reservation of the right to litigate certain claims lacks mutuality, under

21   Texas law this "allocation of risk because of superior bargaining power" is enforceable.  Id.  The

22   arbitration provision is not so one-sided as to render the arbitration provision substantively

23   unconscionable.

24             Because the Court concludes that the arbitration provision is enforceable, the Court

25   concludes that the Toff Plaintiffs' substantive claims must be heard by an arbitrator.

26                                            **CONCLUSION**

27             For the reasons set forth above, the Court grants Dickey's motion to compel arbitration and

28

United States District Court
Northern District of California

stays these proceedings.[8]  As to the Meadows Plaintiffs, the Court stays the litigation to permit the

arbitrators) to first to arbitrate these "gateway" issues, and then, if permissible, to arbitrate the

substantive claims.  As to the Toff Plaintiffs, the Court stays the litigation to permit the

arbitrator(s) to arbitrate their substantive claims.[9]

    The parties are instructed to submit status reports to the Court within ninety (90) days of

the date this order is electronically filed, and additional joint status reports every ninety (90) days

thereafter, apprising the Court of the status of the arbitration proceedings.  Upon completion of the

arbitration proceedings, the parties shall jointly submit to the Court, within fourteen days, a report

advising the Court of the outcome of the arbitrations, and request that the case be dismissed or that

the case be reopened and a case management conference be scheduled.

    IT IS SO ORDERED.

Dated:  November 12, 2015


_____
JON S. TIGAR
United States District Judge


---

[8] Dickey's requests that the Court strike class allegations because the Franchise Agreements have valid class action waivers.  See ECF No. 15 at 12-13; see also Murphy v. DirecTV, Inc., 724 F.3d 1218, 1226 (9th Cir. 2013) ("Section 2 of the FAA, which under Concepcion requires the enforcement of arbitration agreements that ban class procedures, is the law of California and of every other state.").  The Court will stay class claims pending the decision on arbitrability by the arbitrator for the Meadows Plaintiffs.

[9] Arbitration proceedings will be initiated in the Northern District of California.  As directed by 9 U.S.C. section 4, arbitration "shall be within the district in which the petition for an order directing such arbitration is filed."  See also Textile Unlimited, Inc. v. A..BMH & Co., 240 F.3d 781, 785 (9th Cir. 2001) ("[Section] 4 only confines the arbitration to the district in which the petition to compel is filed."); Homestake Lead Co. of Missouri v. Doe Run Res. Corp., 282 F. Supp. 2d 1131, 1144 (N.D. Cal. 2003) (ordering arbitration to take place in San Francisco, California).  Dickey's also consents to venue in the Northern District of California.  See ECF No.15 at 10 n. 5.